Maria **ALANIZ et al., Plaintiffs,**

v.

**CALIFORNIA PROCESSORS, INC.,**
**Walnut Creek, California, et al.,**
**Defendants.**

**No. C–73–2153 WHO.**

United States District Court,
N. D. California.

Nov. 11, 1976.

Vilma S. Martinez, Sanford Jay Rosen, Drucilla S. Ramey, Mexican American Legal Defense and Educational Fund, Alan Exelrod, Michael A. Mendelson, Exelrod & Mendelson, San Francisco, Cal., for plaintiffs.

Robert M. Lieber, Littler, Mendelson & Fastiff, San Francisco, Cal., for Cal. Processors, Inc., Contadina Foods, Davis Cannery, Tri-Valley Growers Plants Nos. 1, 2 and 7.

Donald D. Connors, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., for Tillie Lewis Foods, Inc.

Richard M. Bryan, Farella, Braun & Martel, San Francisco, Cal., for Hunt-Wesson Cannery.

Jay W. Luther, Chickering & Gregory, San Francisco, Cal., for Joan of Arc Cannery.

Jonathan H. Sakol, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for Cal. Canners & Growers.

Donald S. Tayer, Neil Bodine, Brundage, Neyhart, Beeson & Tayer, San Francisco, Cal., for defendant Unions.

Gary R. Siniscalco, EEOC Regional Office, San Francisco, Cal., for EEOC.

Martin Fassler, Gaenslen & Fassler, San Francisco, Cal., Charles E. Farnsworth, Farnsworth, Denison & Saperstein, Oak-

land, Cal., Clifford C. Sweet, Amanda Hawes, Frank Roesch, Legal Aid Society of Alameda County, Union City, Cal., James Gonzalez, Contra Costa Legal Services Foundation, Pittsburg, Cal., Theodore G. Smith, Smith, Johnson, Fogel & Ramo, San Jose, Cal., Rodrigo Mayorga, Sacramento, Cal., William H. Carder, William R. Shepard, McCarthy, Johnson & Miller, San Francisco, Cal., for intervenors and applicants for intervention.

## OPINION

ORRICK, District Judge.

On April 1, 1976, this Court approved a settlement in this class action employment discrimination suit affecting employment practices in the food processing and canning industry in Northern California. The Settlement Agreement and Consent Decree (the Decree), effective June 15, 1976, altered seniority, job bidding, and job-training procedures within the industry and established other mechanisms intended to achieve the basic objective of opening up higher-paying and year-round positions for female and minority group workers.

Before the Court is a motion to modify the Decree in several respects, the most important of which is to recognize seniority "according to each employee's most recent seasonal seniority date". Also before the Court is a motion to intervene on behalf of eighteen Anglo males. For the reasons hereinafter stated, the motion to modify the Decree is granted effective September 29, 1976, and the motion to intervene is denied.

### I.

Preliminarily, it is appropriate to review the procedural posture of the case. This action was filed December 3, 1973, by the plaintiffs, representing a class of female and minority workers. The action, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981, charged the employers, who own and operate some seventy-four food pro-

cessing and canning plants in Northern California, and the unions, who represent the employees in said plants, with discriminating against the plaintiffs and the plaintiff class by denying females and minority group members opportunities to obtain higher-paying and year-round positions within the canning industry. In 1974, conciliation negotiations were conducted with the Equal Employment Opportunity Commission (EEOC). These negotiations culminated in an agreement on February 19, 1975, and on June 20, 1975, all parties to the agreement filed it with the Court and requested, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that notice of the proposed settlement be sent to the settlement class.

Several groups of individuals (the Intervenors), members of the purported class, filed motions to intervene on April 28, 1975, and on June 13, 1975. During the hearings held with respect to the fairness of the agreement over a period of six days the Intervenors were allowed to participate fully. As a result of their participation, the agreement was drastically altered.

At the end of the hearings, the Court found the agreement, as altered, to be fair, reasonable, and adequate and certified an industry-wide class consisting of all present, past, future, and potential bargaining unit employees and applicants for employment of member companies of California Processors, Inc. (CPI) who were Blacks, Asian-Americans, Native Americans, Spanish-surnamed Americans, or females. The Court then denied the motions to intervene. The Intervenors filed a notice of appeal which has now been withdrawn.

The central feature of the Decree was the introduction of a "plant seniority" system for class members. Under the Decree, all class members could utilize plant seniority, that is, the earlier of the regular or seasonal seniority date, for job bidding purposes, including bidding during the "rack-up" of jobs at the beginning of the processing season. However, the utilization of plant seniority for layoff and other purposes was limited to those class members who had

attained a high-bracket job since July 2, 1965, or who attained such a job under the life of the Decree.

Based upon their experience in implementing the Decree, the parties to the agreement now move the Court to approve certain modifications of the Decree.

## II.

### A.

The principal modification of the Decree agreed to by the parties provides that "all employees' seniority shall be recognized according to each employee's most recent seasonal seniority date". This change means that all employees, including nonclass members, would be arranged on a seniority list in order of seniority seniority. It should be noted that employees become "seasonal" after thirty days and attain "regular" status after 1400 hours of work in a calendar year. Accordingly, employees attain "seasonal" seniority before achieving regular status. The change makes the new seniority available to all employees, be they members of the affected class or not, for purposes of job bidding, layoff and recall, and other rights determined by seniority.

Across-the-board plant seniority for all purposes is not new to this litigation. The concept was urged by the Intervenors during the course of the hearings on the fairness and adequacy of the settlement agreement. At that time, the parties to the agreement opposed the idea because it conflicted with a provision of the collective bargaining agreement under which an employee who refused to do available work for which he or she had the seniority and qualifications suffered a complete loss of seniority. Thus, the proponents of the settlement then argued that if plant seniority were granted to class members for all purposes, large numbers of workers who only desired

to work during the season would be placed in line for regular jobs continuing after the season and would be forced to accept such employment or lose seniority rights. However, this major impediment to the simplified, across-the-board plant seniority concept has now been removed. Under the change, the union and the company shall institute an industry-wide, standardized, neutral "waive-off" policy.[1] Thus, seasonal workers will be protected from forced seniority loss under the proposed change.

■ During the course of the hearings, it was argued that the implementation of the two-tiered plant seniority system urged by the proponents and approved under the Decree would not be sufficient to afford all class members their "rightful place" in the cannery work force. In particular, it was pointed out that the Decree did not confer the full benefits of plant seniority upon class members who attained a high-bracket job *prior* to July 2, 1965, or to those class members who never attained a high-bracket position. While recognizing this fact, the Court noted that a *settled* action may still be approved even if it arguably falls short of achieving for each affected discriminatee his or her "rightful place" in the seniority system. *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 850 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

Now, however, under the modification of the Decree the affected class is much closer to the achievement of the "rightful place" standard. The proposed seniority modifications significantly improve the relative seniority status of females. Consequently, the seniority status of males, including minority males, may suffer, at least in terms of the assignment of seniority numbers. Overall, minorities as a class will not suffer adverse consequences.[2]

---

1. Although the formal details of this "waive-off" policy are still being ironed out by the parties, the functional outlines of the system have been made clear to the Court. Under the uniform "waive-off" system, essentially seasonal workers will be able to "waive" or decline, *without loss of plant seniority,* more reg-

ular, year-round job openings for which plant seniority has suddenly made them available.

2. The evidence adduced at the hearings on the fairness and adequacy of the settlement indicated that women were substantially underrepresented in the high-bracket jobs and regular

## B.

No specific findings of discrimination have heretofore been made in this case. The propriety of granting affirmative relief, including class-wide seniority adjustments, in the context of a settled employment discrimination suit where there has been no judicial finding or admission of past discrimination, has yet to be definitively resolved. The uncertainty of this difficult legal and troubling social issue was recently noted by Judge Gesell in *McAleer v. AT&T,* 416 F.Supp. 435 (D.D.C.1976).

However, in *EEOC v. AT&T,* 419 F.Supp. 1022 (E.D.Pa.1976), Judge Higginbotham ruled that a consent decree embodying goals, quotas, timetables, and seniority adjustments to implement an affirmative action program was lawful, notwithstanding the absence of a finding or admission of past discrimination. Judge Higginbotham said that to require such a predicate to an affirmative action program would contravene Congress' clear intent that Title VII suits should be settled, not litigated.

It is not necessary to follow the *AT&T* case here since the evidence adduced at the hearings provides ample support for a *prima facie* finding of discrimination sufficient to warrant the seniority adjustments and other affirmative relief in this case. The seniority adjustments, including the modification calling for across-the-board plant seniority are designed to aid those who have been the victims of past discrimination. The propriety of such affirmative relief to redress past discrimination is clear, even in an industry with many temporary employees. *Patterson v. Newspaper & Mail Deliveries Union,* 514 F.2d 767 (2d Cir. 1975).

■ At the hearings previously conducted in this case, the Court also heard testimony on the effects of the settlement agreement upon nonclass members, including Anglo males. The Ninth Circuit clearly mandates that district courts consider the effects of any seniority adjustments on nonclass members in fashioning remedies under

jobs. Minorities as a group were also underrepresented. Evidence as to the effects of any

Title VII. *United States v. Navajo Freight Lines,* 525 F.2d 1318 (9th Cir. 1975); *Mandujano v. Basic Vegetable Products, Inc.,* 541 F.2d 832 (9th Cir. 1976). Based upon the evidence presented, this Court concluded that the settlement did not contravene *Navajo Freight* by allowing "bumping" of nonclass members.

■ Across-the-board use of "seasonal seniority dates" by all employees is a better accommodation of the competing interests at stake here. The Supreme Court recently reaffirmed that Title VII protects whites as well as minorities, and presumably men as well as women, from discrimination in employment. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1975). However, in *McDonald* the Court specifically declined to consider whether a remedial preference pursuant to an affirmative action program was unlawful. But, the Court recently made clear that it is proper to award retroactive seniority benefits to the victims of discriminatory employment practices even though such relief may conflict with the expectations of other, arguably innocent, employees. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976).

■ The Court believes that the Decree as modified effectuates the remedial purposes of Title VII while at the same time it avoids the establishment of a seniority system which might put some nonclass members (Anglo males) at an unwarranted disadvantage and, thus, the Decree more fully comports with the requirements of *Navajo Freight, Franks,* and *McDonald.*

## C.

The parties also seek modifications concerning the dissemination of information about the Decree to the work force. They propose the publication of certain written materials as well as at least one meeting per plant to explain the Decree. The Court

affirmative action program upon minority males was also introduced.

believes that the holding of one mass meeting is *not* a very effective way to explain the Decree. A series of three to five meetings per plant should be held in addition to the dissemination of written materials. Accordingly, the Court approves the proposed modifications.

### III.

The Decree settling the action filed December 3, 1973, was approved on April 1, 1976, and became effective June 15, 1976. The entry of the Decree and the implementation of the seniority adjustments pursuant thereto are now attacked by eighteen named individuals, purporting to represent a class of bargaining unit employees in the canning industry who at this late date move to intervene. They claim that the implementation of the Decree adversely affects their employment status and unlawfully discriminates against'them on the basis of race, sex, national origin, and color in violation of Title VII. Other violations of various federal labor laws are also alleged. Without specifying whether they wish to enter the lawsuit as plaintiffs or defendants, they seek leave to intervene under Rule 24 of the Federal Rules of Civil Procedure for the purpose of contesting the validity of the Decree. Eight of the applicants are white males, five are minority males, and five are females. The applicants pray for relief from the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Alternatively, they seek a stay of the Decree under Rule 62 of the Federal Rules of Civil Procedure pending appeal.

The requisites for intervention under Rule 24(a) indicate that upon timely application, a person should be permitted to intervene as a matter of right when (a) the applicant claims an interest in the subject matter of the action, and (b) he is so situated that the disposition of the action may as a practical matter impair his ability to protect his interest, unless the applicant's interest is adequately represented by existing parties.

■ As Professor Moore notes, intervention after judgment is unusual. However, it may be granted where it is the only way to protect the intervenor's rights, *e. g.,* where he is a member of the class in whose behalf the action was originally filed, and would be bound by the judgment, but the party purporting to represent him does not or cannot pursue an appeal. 3B Moore, *Federal Practice* ¶ 24.13(1) at 24–256 *et seq.*; *Pelligrino v. Nesbit,* 203 F.2d 463 (9th Cir. 1953).

■ Intervention after the entry of a consent decree has been permitted in employment discrimination suits to allow those who claim to be adversely affected by the decree to have their say as to the propriety of the relief. *United States v. Allegheny-Ludlum Industries, Inc.,* 63 F.R.D. 1 (N.D. Ala.1974), *aff'd* 517 F.2d 826 (5th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *EEOC v. AT&T,* 506 F.2d 735 (3d Cir. 1975).

■ However, this motion is untimely. Intervention may appropriately be denied where the intervenors knew or reasonably should have known of their rights long before making application and slept on them. *See EEOC v. AT&T,* 365 F.Supp. 1105 (E.D. Pa.1973), *aff'd in part and rev'd in part,* 506 F.2d 735 (3d Cir. 1975); *SEC v. Bloomberg,* 299 F.2d 315 (1st Cir. 1962).

■ Here, this litigation was well publicized and continued for several years. Six days of hearings were conducted on the fairness of the Decree. Under the Court's supervision, the defendants sent out over 150,000 notices of the hearings on the fairness of the settlement, published notices in plants and in newspapers where the canneries are located. As Judge Trask recently noted in his dissent in *Mandujano v. Basic Vegetable Products, Inc., supra,* 541 F.2d at 840:

"* * * It is difficult to believe that over the protracted period of discussion, negotiation, and hearing and the comprehensive posting and publication, the Anglo male employees would not have known of the problem or taken an interest in the settlement if it appeared to be prejudicial to their interests."

Some of the purported Intervenors are class members, who are bound by the Decree. They had the opportunity to opt out and/or to present their objections at the extensive hearings conducted in this case. The Court notes that the procedures followed in this case comport with the requirements for allowing full consideration of Title VII settlements only recently mandated by the Ninth Circuit in *Mandujano.*

This Court has adequately considered the effect of the Decree on nonclass members as required by *Navajo Freight* and *Mandujano.*

Moreover, the nonclass members were adequately represented by the union defendants in this case. Here, the union was a defendant and participated in the fashioning of the Decree.

The motion for modification of the Decree is GRANTED, and the motion for leave to intervene is DENIED.