AIRLINE STEWARDS AND STEWARD-ESSES ASSOCIATION, LOCAL 550, TWU, AFL-CIO, et al., Plaintiffs-Appellees,

v.

AMERICAN AIRLINES, INC., Defendant-Appellee,

and

Association of Professional Flight Attendants, Intervenor-Appellant.

No. 77–2098.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1978.
Decided March 14, 1978.

Abe F. Levy, Lawrence Rosenzweig, Los Angeles, Cal., for intervenor-appellant.

Marilyn S. G. Urwitz, E. E. O. C., Washington, D. C., amicus curiae.

Charles Pressman, Aram A. Hartunian, Laurence A. Carton, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Chief Circuit Judge, and PELL and SPRECHER,* Circuit Judges.

PER CURIAM.

The issue in this case is whether the district court abused its discretion by approving the settlement of a case under Title VII of the Civil Rights Act of 1964 [1] without litigating the merits of the plaintiffs' claims and by not requiring a full evidentiary hearing on the effect of the settlement on the interests of the defendant's incumbent employees.

I

The plaintiffs in this case are a certified class composed of all female persons employed as flight cabin attendants whose employment with the defendant, American Airlines, was terminated due to their having children on or after July 2, 1965. The intervenor, the Association of Professional Flight Attendants (APFA), is the exclusive bargaining agent for those attendants presently employed by American Airlines.

* Although Circuit Judge Sprecher heard oral argument, he later disqualified himself from any further consideration of this case.

1. 78 Stat. 253, Title VII, as amended, is codified in 42 U.S.C. § 2000e *et seq.*

This suit was filed in 1970 in response to the defendant airline's policy of terminating stewardesses who became pregnant or adopted children and not allowing women with children to work as stewardesses. The suit [2] was brought by the Air Line Stewards and Stewardesses Association (ALSSA), the intervenor's predecessor as the bargaining representative of defendant's flight cabin attendants. The ALSSA entered into a settlement agreement with defendant which provided neither back pay nor retroactive seniority to those attendants who had been discharged under defendant's policy. That agreement was approved by the district court, but reversed by this court. *Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc.,* 490 F.2d 636 (7th Cir. 1973), *cert. denied sub nom. Air Line Stewards & Stewardesses Ass'n, Local 550 v. Zipes,* 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974).

On remand, after discovery and extensive briefing, the district court granted plaintiffs' motion for summary judgment. Defendant appealed that judgment to this court,[3] but during the briefing for that appeal, a settlement was reached. The settlement provides, *inter alia,* for the payment of cash, the restoration of accrued company seniority and provision for the court to decide whether occupational seniority [4] was appropriate if the APFA did not agree to a full restoration of that latter type of seniority.

The APFA filed a motion to intervene and requested a hearing on its objections to the settlement. The district court recognized that "for a complete resolution of the issues that arise out of this proposed settlement, that the Union should have a voice concerning it" and therefore, the court granted APFA's motion and conducted a hearing on the issues raised (Tr. at 2).

At the hearing, the intervenor declined to present any evidence, but instead argued orally on behalf of the incumbent employees' rights.[5] Intervenor's only complaint with the agreement was its provision for full retroactive "occupational seniority" for those flight attendants seeking reinstatement. Since occupational seniority is used under the collective bargaining agreement as the basis for determining many working conditions, *e. g.,* choice of bases and order of lay-off, intervenor argued that the granting of this relief would be an onerous burden on the incumbent employees. After the intervenor's argument, the court stated that "the equities are on the side of approv-

2. This suit was not the first one filed in response to defendant's policy of terminating stewardesses who became mothers. In 1967, Bernice Hillgruber filed a charge with the Equal Employment Opportunity Commission. Two years later, she filed a class action in California. In October 1969, Bonnie Pulskamp and others also filed EEOC charges against defendant.

3. That appeal was originally filed jointly with Trans World Airlines in appeal number 77–1325 which was argued the same day as this appeal but is still pending. TWA has continued its appeal and American has remained in the appeal pending the resolution of the settlement issue. In light of our disposition of this case, we assume that American will remove itself from that appeal.

We might note that the procedures that led to the approval of this settlement by the district court were somewhat unusual. While the briefs were being written for the appeal in 77–1325, American Airlines and the plaintiff class reached a tentative settlement agreement. Since TWA was proceeding on with its appeal, there was no need to seek a halt to the appeal while the district court evaluated the settlement. Thus, plaintiffs and American filed the settlement agreement with the district court. It held a hearing and approved the settlement during the same time that the appeal in 77–1325 was proceeding in this court. We believe that the parties acted appropriately to guarantee the interests of all concerned with the settlement.

4. None of the parties in this appeal explained very fully the difference between the two types of seniority, especially the use made of company seniority. Intervenor listed the following as the benefits controlled under the collective bargaining agreement by length of occupational seniority: choice of flight, choice of status, promotional opportunities and rate of pay. Thus, it is clear that occupational seniority is an important part of the settlement agreement both for the returning and the incumbent flight attendants.

5. Some of the details of the hearing are described in part III of this opinion *infra.*

ing the settlement agreement. . . . I think it is the best and most equitable result we can achieve in the case." Subsequently, the court entered an order approving the settlement agreement and providing for the restoration to those plaintiffs requesting reinstatement of their accrued occupational seniority from the time of their discharge. Intervenor appeals that judgment.

## II

Intervenor initially argues, relying on *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), that the district court erred in not requiring each plaintiff to demonstrate that her claim is not time barred under 42 U.S.C. § 2000e–5(d) (1970).[6] Intervenor also argues, relying on *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), that the district court erred in not requiring each plaintiff to prove that she would have continued in employment in the years between her pregnancy and the settlement but for the defendant's wrongful termination. While we believe that in a controverted Title VII case the issues raised by intervenor would be both difficult and interesting, we must recognize that we are here reviewing the propriety of a settlement and not a judgment rendered after a trial. We believe that the issues raised by the intervenor should not be decided on the basis of Title VII law, but rather must be decided on the basis of legal principles regulating judicial review of settlement agreements. Relying on those principles, we conclude that the district court correctly declined to decide those issues relevant to the merits of the plaintiffs' claims prior to deciding merely whether the settlement agreement was appropriate.

■ It is a well-settled principle that the law generally favors the encouragement of settlements. *See Florida Trailer & Equip-*

ment Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960). That general rule has been recognized as applicable to settlements in Title VII cases. *Patterson v. Newspaper & Mail Deliverers Union of N.Y. & Vicinity*, 514 F.2d 767, 771 (2d Cir. 1975), *cert. denied sub nom. Larkin v. Patterson*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). In fact, one court has concluded that it is "the clearly expressed intent of that Act to encourage settlements." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). *See also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

■ In addition, it is generally recognized that settlements are entered into because of "the very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense . . . ." *Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). Based on these considerations, this court has held that a district court in reviewing a settlement agreement "should not attempt to decide the merits of the controversy . . . [because] [a]ny virtue which may reside in a compromise is based upon doing away with the effect of such a decision." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976). *See generally* Note, *Factors Considered in Determining the Fairness of a Settlement*, 68 Nw.U.L.Rev. 1146, 1154 (1974).

■ Applying these general principles to this case, we believe the district court correctly declined to decide the merits of each of the plaintiffs' claims. Intervenors essentially ask this court to require in excess of 100 mini-trials on issues dealing with the adequacy of each plaintiff's complaint and the availability of defenses. It seems to us beyond serious dispute that no reasonable parties are going to settle any case if an intervenor can force them to litigate separately the merits of each claim. The rule urged by the intervenor would most seri-

---

6. Prior to the 1972 amendments to Title VII, the Act provided that "[a] charge . . . shall be filed within ninety days after the alleged unlawful employment practice occurred . . . ." 78 Stat. 260. The amendments add-ed a new subsection (a) to § 706. Consequently, subsection (d) was redesignated as subsection (e). At the same time, it was amended to enlarge the limitations period to 180 days. 42 U.S.C. § 2000e–5(e).

ously discourage efforts to settle Title VII cases, and we refuse to sanction such a result.

■ The only argument that intervenor offers to support a contrary result is that the district court had a duty to consider the interests of the incumbent employees before approving the settlement. *See Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 289, 293 (N.D.Cal.1976). We have no quarrel with that general proposition, but it certainly does not lead to the conclusion that the court had a duty to litigate the merits of the plaintiffs' claims prior to approving the settlement. At most the court was required to permit APFA to intervene and offer it an opportunity to present to the court its members' interests in the proposed remedy. This intervenor had an opportunity to do. The district court was required to do no more. *See EEOC v. American Tel. & Tel. Co.*, 556 F.2d 167, 173 (3d Cir. 1977) (interests of a third party in a consent decree limited to appropriateness of the remedy).

### III

Intervenor's final argument is that the district court abused its discretion by approving this settlement without sufficiently apprising itself of the facts as to the settlement's impact on the incumbent employees. To evaluate this contention, we must focus in some detail on what transpired at the settlement approval hearing.

At the beginning of the hearing, the court recognized explicitly the importance of having the APFA's members' interests represented and thus permitted the union to intervene. Then, the court acknowl-edged that the intervenor had witnesses available and, although it did not encourage having them testify, it seems clear from the record that the court was willing to permit intervenor to make an offer of proof. Intervenor's counsel, in turn, stated that "[i]f we can avoid it, I think we would be better off . . ." (Tr. at 3).

The district court then permitted both sides to argue as to the likely effect of this agreement on the incumbent employees. It was established that the parties' best estimate was that at most 150 flight attendants [7] would seek reinstatement and that there were about 5000 incumbent flight attendants. Thus, the numerical impact of the agreement appeared to be minimal. In addition, the court was told that a flight attendant "who wishes to go back to work will only be assigned to a base when there is an opening in that base and the people will be assigned to that base over a rather lengthy period of time . . ." (Tr. at 7–8). The court finally was informed that no incumbent flight attendant would lose his or her job as a result of the agreement (Tr. at 7). Based on these considerations, the court decided that the settlement was fair and that it should be approved.

■ In assessing that conclusion, we should make clear at the outset what legal standard should guide a district court's determination of whether this remedy is appropriate in the face of a challenge by incumbent employees. We believe that in this type of a settlement case, the Supreme Court's standard as to the appropriateness of "competitive status" [8] seniority announced in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), applies with full force.[9]

---

7. Intervenor makes much of the fact that this number was merely an estimate. We find that fact to be of little significance. First, intervenor does not suggest that subsequent events have shown the estimate to be substantially incorrect. Second, even if all of the class members sought reinstatement, the number would still be less than 300. Intervenor did not argue before the district court nor before this court that any undue burden would attend the infu-sion of even that many new employees into the present work force.

8. "Competitive status" seniority as described in *Franks* is the equivalent of "occupational" seniority as used in defendant's collective bargaining agreement with intervenor.

9. We do not decide the extent to which *Franks* should be used as a guide in a traditional settlement case where there are dissident members

*Cf. United States v. Trucking Employers, Inc.,* 561 F.2d 313, 317 n.15 (D.C.Cir.1977). In *Franks,* the Court held:

[D]istrict courts should take as their starting point the *presumption* in favor of rightful-place seniority relief, and proceed with further legal analysis from that point; and that such relief may not be denied on the abstract basis of adverse impact upon interests of other employees but rather only on the basis of *unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases.*

424 U.S. at 779 n.41, 96 S.Ct. at 1271, (emphasis added). Thus, contrary to intervenor's contention that the burden at the hearing was somehow on the district court to determine on some abstract basis the fairness of the settlement, we conclude that the burden was on the intervenor to demonstrate some "unusual adverse impact" that justified not permitting full retroactive seniority.

 Examining the district court's action in light of this standard, we find that there was clearly no abuse of discretion. First, intervenor declined to make any evidentiary showing at the hearing of an "unusual adverse impact" that this relief would create. In fact, intervenor in the arguments made to this court has still not suggested in anything more than conclusory statements how this settlement will unduly disadvantage the incumbent employees who might not even be employed but for the injury done to the plaintiffs.

Second, the district court made an admirable effort to sort out the likely impact of and the "balance of equities" surrounding the provision of retroactive occupational seniority. It assured itself that no present employees would lose their positions because of this agreement and also that the number of returning employees was not so large as to create undue problems. On the record before us, we find not the slightest basis for concluding that the court abused its discretion.

For these reasons, we believe that the district court's judgment approving the settlement agreement must be

Affirmed.

---

of a class of discriminatees. It may well be that the minority members of the class will have to forego the full retroactive competitive seniority provided in *Franks* so that the majority may acquire some benefits and yet avoid the costs and uncertainties of litigation. Such a decision would have to be made on a case-by-case basis.

Here, however, we deal with a case where settlement was reached subsequent to the entering of summary judgment against the defendant. The plaintiffs have almost earned through full litigation the remedy proposed in *Franks* and adopted in this settlement. The only impediment to that remedy here is the intervenor's complaint. The interests of the intervenor's members are identical to those of the incumbent employees in *Franks* that were given such little weight by the Supreme Court. The fact that this case was settled rather than fully litigated is of no consequence to the appropriateness of applying *Franks* as the basis for guiding the district court's discretion.