**In re TEREX CORPORATION, Debtor.**

**FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Plaintiff,**

v.

**TEREX CORPORATION, Defendant/Debtor.**

**Bankruptcy No. 583–1502.
Adv. No. 584–0002.**

United States Bankruptcy Court,
N.D. Ohio.

Sept. 16, 1985.

Joseph Patchan, Baker & Hostetler, Cleveland, Ohio, for plaintiff.

John Schwemler, Brouse & McDowell, Akron, Ohio, for Creditors' Committee.

John C. Parks, Squire, Sanders & Dempsey, Cleveland, Ohio, for Terex.

## FINDING AS TO MOTION OF CREDITORS' COMMITTEE TO INTERVENE

H.F. WHITE, Bankruptcy Judge.

This matter was heard on August 23, 1985 upon the motion of the Official Creditors' Committee of the Chapter 11 reorganization of Terex Corporation (herein the "committee") to intervene in this adversary proceeding under Rule 24(b) of the Federal Rules of Civil Procedure made applicable to this proceeding by Bankruptcy Rule 7024. The committee filed its motion to intervene, along with its memorandum in support of motion, on August 9, 1985. The committee filed its counterclaim on August 15, 1985, incorporating by reference all allegations and averments contained in the answer and counterclaim filed February 2, 1984 [sic] by Terex Corporation (herein "Terex"), debtor/defendant, and its amended answer and counterclaim filed March 13, 1984. The court granted an expedited hearing of this matter by an order entered August 19, 1985 at the committee's request. First Wisconsin National Bank of Milwaukee (herein "First Wisconsin"), plaintiff in this adversary proceeding, filed its memorandum in opposition to the motion to intervene on August 21, 1985. The committee was represented at the hearing by John Schwemler, Esq. of Brouse & McDowell; First Wisconsin was represented by Joseph Patchan, Esq. and Wayne C. Dabb, Jr., Esq. of Baker & Hostetler; and Terex was represented by John C. Parks, Esq. of Squire, Sanders & Dempsey.

Based upon the briefs filed by the parties, and the oral arguments of counsel at the hearing, the court hereby makes the following Findings of Facts and Law.

### FINDINGS OF FACTS

1. On November 4, 1983, Terex filed its voluntary petition for Chapter 11 reorganization.

2. On January 6, 1984 First Wisconsin filed its complaint against Terex seeking a declaratory judgment that it has a valid, first and best lien upon certain export receivables; that it is the rightful owner of funds that were on deposit in Terex's account against which it effected a setoff on November 4, 1983; that it has a valid, first and best lien upon the funds it set off; and that it is entitled to rescind certain of its transactions with Terex as a result of the alleged pre-petition fraud of Terex.

3. a. On February 10, 1984 Terex filed its answer and counterclaim.

b. On March 6, 1984 the court granted First Wisconsin leave to move or plead until March 13, 1984.

c. On March 13, 1984 Terex filed its amended answer and counterclaim.

d. On April 6, 1984 First Wisconsin filed its reply to the counterclaim pursuant to an order entered April 4, 1984 approving the stipulation for leave to plead until April 6, 1984.

e. On April 3, 1985 Terex filed its second amended answer and counterclaim upon motion and order of court.

f. On May 15, 1985 First Wisconsin filed its reply to the second amended counterclaim of Terex upon an order granting leave to plead entered April 24, 1985 and May 7, 1985.

4. On May 21, 1985 the court entered its pre-trial order setting trial for October 15, 1985, and setting certain deadlines for discovery: (a) plaintiff and defendant each to furnish the other with all documents it intends to introduce into evidence by September 18, 1985, with copies to the court by October 7, 1985; (b) plaintiff and defendant to furnish each other with its witness list by September 18, 1985, with copies to the court by October 7, 1985; and (c) all discovery to be completed by September 20, 1985.

5. On May 28, 1985 the court entered its protective order upon the stipulations of the parties regarding confidential data and documents produced in discovery.

6. a. On July 23, 1985 First Wisconsin filed its first motion to take depositions upon oral examination of eight deponents, all scheduled to be taken on or before August 16, 1985.

b. On July 29, 1985 First Wisconsin filed its second motion to take deposition upon oral examination of Price Waterhouse by its custodian of records to be taken August 6, 1985.

c. On August 9, 1985 the creditors' committee filed its motion to intervene and memorandum in support of motion.

d. On August 9, 1985 the creditors' committee filed its motion for an expedited hearing on its motion to intervene and its memorandum in support of motion.

7. On August 15, 1985 the creditors' committee filed its counterclaim incorporating the answer and counterclaim of Terex filed February 2, 1984 [sic], and the amended answer and counterclaim of Terex filed March 13, 1984.

8. On August 15, 1985 First Wisconsin and Terex filed their joint motion for continuance of the trial date until January 20, 1986.

9. On August 16, 1985 the court entered its order upon the joint motion for continuance of trial filed by First Wisconsin and Terex setting the trial date at January 20, 1986, and setting certain deadlines for discovery: (a) plaintiff and defendant each to furnish the other with all documents it intends to introduce into evidence by January 6, 1986, with copies to the court by January 13, 1986; (b) plaintiff and defendant to furnish each other with its witness list by January 6, 1986, with copies to the court by January 13, 1986; and (c) rescheduling the next pretrial to a date on or after December 20, 1985.

10. On August 15, 1985 First Wisconsin filed its third motion to take depositions upon oral examination of Terex by John R. Danielak, its Executive Vice President and Secretary, to be taken August 28, 29, and 30, 1985.

11. On August 20, 1985, First Wisconsin filed its fourth and fifth notices to take depositions upon oral examination of Albert F. Duaso, former Manager of Distribution and Pricing of Terex, to be held September 5, 1985, and of Carl D. Wilson, former Director of Marketing of Terex, to be held September 12, 1985.

12. First Wisconsin has made five requests for production of documents by Terex, the first being filed February 24, 1984.

13. Terex has made two requests for production of documents by First Wisconsin, the first being filed March 22, 1984.

14. First Wisconsin has filed four sets of interrogatories to Terex, the first being filed March 26, 1984.

15. Terex filed its first set of interrogatories to First Wisconsin on April 3, 1985.

16. First Wisconsin has responded to the first and second requests for production of documents by Terex and Terex has responded to the first, second, and third requests for production of documents by First Wisconsin. There have also been objections by First Wisconsin to certain answers and to the first set of interrogatories by Terex. Terex filed its answers and ob-

jections to First Wisconsin's first, second, and third sets of interrogatories.

17. Terex is being represented in this adversary proceeding by Squire, Sanders & Dempsey of Cleveland, Ohio which has a reputation of being a very capable and competent law firm and has intimate knowledge of the issues and facts relating to this proceeding. There appears at this time to be no danger of collusion by the attorney for First Wisconsin and the attorney for Terex.

18. There is no evidence that the interest of the creditors' committee in this proceeding is not being adequately represented.

19. This court has already held several pre-trial conferences in this proceeding, and the creditors' committee was represented at the first pre-trial and has attended numerous depositions. From the fee application filed with this court, it is evident that Squire, Sanders & Dempsey are apprising them of the action being taken in this case and the creditors' committee's counsel has been aware of this dispute since the filing of the complaint in January, 1984.

## ISSUE

Whether the application of the committee for intervention in this adversary proceeding pursuant to Rule 24(b) of the Federal Rules of Civil Procedure was timely made?

## DISCUSSION OF LAW

Rule 24(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7024, states in pertinent part that:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The committee moves pursuant to Rule 24(b) to intervene in this adversary proceeding which involves the competing claims of First Wisconsin and Terex to certain funds deposited in a cash collateral account at First Wisconsin, and competing claims regarding a setoff of Terex funds on deposit at First Wisconsin in the sum of $5.1 million on November 4, 1983. The committee states in its memorandum in support of its motion that it expects Terex to file a chapter 11 plan of reorganization on August 9, 1985, and that such a plan will provide that the claim of Terex against First Wisconsin in respect of the $5.1 million setoff will be transferred to a settlement trust for the benefit of unsecured creditors.[1] Creditors' Committee, Memorandum in Support of Motion at 4–5. Terex would retain the claim against First Wisconsin in respect of the $1.9 million in the cash collateral account. As of August 23, 1985, the date of the hearing on this matter, Terex had not filed its chapter 11 plan of reorganization. The committee argues that the only way it can protect the interest of the unsecured creditors is to intervene as a new party counterclaimant and to take an active role in the litigation. *Id.* at 8. It acknowledges that extensive discovery has already taken place. *Id.* at 4.

A motion for permissive intervention is directed to the sound discretion of the court. *Meyer Goldberg, Inc. of Lorain v. Goldberg*, 717 F.2d 290, 294 (6th Cir. 1983). *See also, New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 n. 38 (5th Cir.1984). An essential element of intervention is a timely application by the party seeking to intervene. The principal consideration of the court in exercising its discretion as to whether a motion for intervention is timely is "whether the delay in moving for intervention will prejudice the existing parties

---

1. The plan would also provide for the transfer of $3.75 million to the settlement trust for the benefit of unsecured creditors, and for the transfer of secured promissory notes in the amount of $3.75 million to the settlement trust for their benefit.

to the case." 7A C. Wright & A. Miller, *Federal Practice and Procedure*, sect. 1916 (1972). Timeliness is to be determined from all the circumstances, such as:

(1) the purpose for which intervention is sought; (2) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case; (3) the prejudice to the original parties due to the proposed intervenor's failure after he knew of or reasonably should have known of his interest in the case promptly to apply for intervention; and (4) the existence of unusual circumstances militating against or in favor of intervention.

*Michigan Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir.1981) (citations omitted).

■ The first factor suggested by the Sixth Circuit in evaluating the timeliness of the motion for intervention is the purpose for which intervention is sought. The committee states that its active participation in this litigation is required to protect its interest. Its "interest" is predicated upon a chapter 11 plan of reorganization of Terex which the committee expected to be filed on August 9, 1985, but which upon the hearing date, two weeks later, had not yet been filed. Creditors' committee, Memorandum in Support of Motion at 4. The interest of the committee in the outcome of the litigation regarding the $5.1 million setoff is speculative. Even if the reorganization plan as described by the creditors' committee is proposed, and confirmed, the right of the committee to collect whatever proceeds it may from the claim is merely derivative of the right of the debtor in possession to those funds.[2] The debtor in possession has all the rights and duties of a trustee serving in a case under chapter 11. 11 U.S.C. sect. 1107(a). In keeping with this fiduciary obligation it must conduct its affairs in the best interests of the estate which includes the collection of assets for the estate. 11 U.S.C. sects. 541, 544, 547, 548, and 553(b). Terex as debtor in possession is duty-bound to use its best efforts to recover the $5.1 million setoff for the estate, whether that claim, if any, may inure to the benefit of the estate generally, or may be used to fund a trust for the benefit of unsecured creditors. The committee has only a general interest in the outcome of this litigation, no more or less than it has in any litigation effort by the debtor in possession to recover assets for the estate. Such is not sufficient:

To intervene under Rule 24(b), the movant must have a "claim or defense" against the defendants with questions of fact or law in common with the main action—not just a general interest in its subject matter or outcome ...

. . . .

The mutual self-interest of the plaintiff and the prospective intervenor is not enough for intervention by permission. *Liberty Mut. Ins. Co. v. Pacific Indem. Co.*, 76 F.R.D. 656, 660 (W.D.Pa.1977) (citations omitted). The committee's interest is adequately represented by the debtor, and consequently, its application for intervention may be denied at the discretion of the court. *In re Marine Aircraft Corp.*, 118 F.Supp. 844, 845 (S.D.N.Y.1954). *See also, New Orleans Public Service, Inc.*, 732 F.2d at 472–73.

The committee does not claim that the competency of debtor's counsel is at issue.[3] The debtor is being represented by one of the leading firms regionally, and perhaps nationally. Although the attorneys for the committee and the attorneys for Terex may be in disagreement with the management of this adversary proceeding, every attorney brings his or her unique perspective to

---

**2.** The proposed counterclaim of the creditors' committee merely restates the pending counterclaim of Terex against First Wisconsin.

**3.** "[C]ompetency of debtor's counsel is not at issue. Even if debtor's counsel continued to pursue the setoff claim after filing of the Plan with the same attention and zeal that it has shown to date, the unsecured creditors ... are entitled to have separate representation." Creditors' Committee, Memorandum in Support of Motion at 16.

each case, and his or her own theory as how to best manage the case. The committee can continue in its role of monitoring these proceedings, and the Bankruptcy Code provides the committee ample opportunity to object to any proposed compromise and settlement of this proceeding.

The second factor suggested by the Sixth Circuit in assessing the timeliness of the application for intervention is the length of time preceding the application for intervention. 657 F.2d at 105. The committee's counsel has been aware of this dispute since the filing of the complaint in January, 1984. It has been monitoring this litigation throughout, and is being kept apprised of all major developments by counsel for Terex. Yet, the committee waited until two months before the scheduled trial to file its motion for intervention. Extensive discovery has already been completed.

Relative to the consideration of the timeliness of the application for intervention is prejudice to the original parties caused by applicant's failure to promptly intervene. 657 F.2d at 105. To allow the committee to intervene would result in the retaking of depositions according to the admission of the committee's counsel at the hearing. First Wisconsin and Terex have already answered extensive interrogatories, and produced voluminous documents. To require the parties to respond anew to the same discovery demands would be a burden prejudicial to their interest in "the just, speedy, and inexpensive determination" of this proceeding. Bankr.R. 1001. The committee's intervention would necessitate renewed discovery demands and result in duplicitous effort, larger attorney fees, and higher consequent cost to the estate, thereby depleting the reserve for the unsecured creditors. The cost to the estate would be without corresponding benefit.

Where a prospective intervenor remains quiescent for over forty days after it knew its interest would be adversely affected, its application for intervention in a corporate reorganization proceeding is untimely and will be denied. *Securities and Exchange Comm. v. Bloomberg*, 299 F.2d 315 (1st Cir.1962). Where a party seeks to intervene at a later date and its interest is already adequately represented, the application for intervention is untimely. *Penick v. Columbus Ed. Ass'n*, 574 F.2d 889 (6th Cir.1978). *See also, In re American Beef Packers, Inc.*, 457 F.Supp. 313, 316 (D.Neb. 1978). "Speed and efficiency in bankruptcy is ... essential, because delay only operates to devalue assets, hinder financial rehabilitation, and prevent exercise of rights." H.R.Rep. No. 595, 95th Cong., 1st Sess. 13 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5975.

The final consideration in analyzing the timeliness of the application to intervene is whether any unusual circumstance militates against or in favor of intervention. 657 F.2d at 105. The court finds no factor militating in favor of intervention. There appears no evidence of collusion between First Wisconsin and Terex. *See, e.g., Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214 (4th Cir.1976). *See also, New Orleans Public Service, Inc.*, 732 F.2d at 472. The resulting undue delay, prejudice to the rights of the original parties to the litigation, and cost to the estate of the debtor militate against intervention. The committee can continue to monitor the litigation, and it has the right to protect its interest by objecting to any compromise or settlement of the litigation. *See, e.g., In re Fidelity American Financial Corp.*, 43 B.R. 74 (Bankr.E.D.Pa.1984).

Neither party has raised the issue of whether section 1109(b)[4] of the Code grants the committee the right to intervene in all issues including adversary proceedings. This issue is a timely and important one, and the court will address it briefly. Section 1109(b) does not define the nature of the right of a creditors' committee to

4. 11 U.S.C. sect. 1109(b) states: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or an indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

appear and be heard on any issue, whether as an intervenor or as amicus curiae. Legislative history offers little illumination. S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978). The two circuits which have considered this issue have adopted dipolar positions. *Cf. In re Fuel Oil Supply and Terminaling,* 762 F.2d 1283 (5th Cir.1985) *with In re Marin Motor Oil, Inc.,* 689 F.2d 445 (3d Cir.1982). The Fifth Circuit has recently held that section 1109(b) does not confer upon a creditors' committee an absolute statutory right to intervene in an adversary proceeding. *Fuel Oil,* 762 F.2d 1283. Applications to intervene in bankruptcy adversary proceedings are governed by the Federal Rules of Civil Procedure which provide for intervention as of right and permissive intervention. *Id.* In the *Fuel Oil* case, the creditors' committee filed a motion under Rule 24(a) to intervene in an adversary proceeding to attempt to set aside a preferential transfer, and on appeal urged that section 1109(b) is " 'a statute confer[ring] an unconditional right to intervene' within the meaning of rule 24(a)(1)." *Id.* at 1284. The *Fuel Oil* decision is premised upon two observations. First, section 1109(b) must be read in juxtaposition with the procedural rules governing intervention. *Id.* at 1286. *See* Rule 24 of Fed.R.Civ.P. and Bankr.R. 7024. The courts have been hesitant to find an unconditional statutory right to intervene. That absolute right to intervene is generally conferred upon the United States or a federal regulatory commission, and rarely upon private parties. Second, Title 28 of the United States Code clearly draws a distinction between bankruptcy "cases" and the proceedings related to them in its jurisdictional grant, and the provisions dealing with abstention, venue and jury trials. *Id.* at 1286. *But see,* Pub.L. 98–353, 98 Stat. 333 (1984). In addition, the Bankruptcy Rules provide two rules for intervention: one for intervention in a "case," and one for intervention in an adversary proceeding. *Fuel Oil,* 762 F.2d at 1286–87. The court finds further support for its interpretation in the bankruptcy cases which have held that section 1109(b) permits a creditors' committee to initiate adversary proceedings *only if* the trustee or debtor in possession has failed to act to protect creditors' interests. *Id.* at 1287.

The leading treatise on bankruptcy law notes that section 1109(b) is derived from Chapter X Rule 10–210(a) which provided that any creditor had the right to be heard on all matters arising in a Chapter X case. 5 *Collier on Bankruptcy,* para. 1109.02[2] (15th ed. 1985). The Advisory Committee's note to the rule indicates that the intent was "to insure fair representation and to prevent excessive control over the proceedings by insider groups." *Id.* (quoting Bankr.R., Ch. X R. 10–210(a), Adv.Comm. Note). As one bankruptcy court noted in dismissing the claim of the creditors' committee regarding the debtor's alleged impropriety for failure to state a claim:

> Sec. 1109(b) provides that various entities including a creditor and a creditors' committee may appear and be heard on any issue in case. This section permits their intervention during the development of a Chapter 11 case when plans are being negotiated, the business conduct of a debtor being investigated, and the need for a trustee considered; this is the meat and potatoes of a Chapter 11 ... Sec. 1109(b) applies to cases and not to proceedings.

*In re Segarra,* 14 B.R. 870, 878 (Bankr.D. P.R.1981).

However, the Third Circuit has reached the opposite conclusion. *Marin,* 689 F.2d 445. It reads section 1109(b) as giving a creditors' committee the unconditional right to intervene in any adversary proceeding arising in a chapter 11 case. *See also, In re D.H. Sharrer & Son, Inc.,* 44 B.R. 976 (Bankr.M.D.Pa.1984) and *In re Cloud Nine, Ltd.,* 3 B.R. 199 (Bankr.D.N. M.1980). The Third Circuit notes that the section 1109(b) phrase "on any issue in a case" is broad enough to include intervention in an adversary proceeding. It finds support in legislative history which describes this right as "unqualified." *Marin,* 689 F.2d at 451. It reasons that to limit

the intervention of the creditors' committee to administrative aspects of cases would be a strained construction of section 1109(b). *Id.* at 451–53. But this court believes that the *Marin* decision misreads the legislative history to section 1109, and considers the issue from too narrow a perspective. This court is in agreement with the reasoning of the Fifth Circuit. The creditors' committee is not merely relegated to intervention in administrative matters only, although these may be the "meat and potatoes" of the chapter 11 reorganization. It may intervene in, or institute, an adversary proceeding when its interest is not being adequately protected or represented. *See In re Calvary Temple Evangelistic Ass'n,* 47 B.R. 520, 522 n. 3 (Bankr.D.Minn.1984). *See also, In re Jermoo's Inc.,* 38 B.R. 197 (Bankr.W.D.Wisc.1984); *In re Jones,* 37 B.R. 969 (Bankr.N.D.Tex.1984); *In re Johns-Manville Corp.,* 36 B.R. 743 (Bankr. S.D.N.Y.1984); *In re Toledo Equipment Co., Inc.,* 35 B.R. 315 (Bankr.N.D.Ohio 1983); and *In re Chemical Separations Corp.,* 32 B.R. 816 (Bankr.E.D.Tenn.1983). But such intervention is governed by the general principles of Rule 24 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases and adversary proceedings by Bankruptcy Rule 2018 and Rule 7024. *See In re George Rodman, Inc.,* 33 B.R. 348 (Bankr.W.D.Okla.1983) and *In re Amarex, Inc.,* 36 B.R. 59 (Bankr. W.D.Okla.1984).

Even if the committee in the matter *sub judice* had filed its motion to intervene under the theory that section 1109(b) confers upon it a statutory right of intervention, this court would not have been so persuaded. This court follows the reasoning of the Fifth Circuit, and would have applied the traditional principles of Rule 24. The committee's application for intervention was not timely, and would fail under Rule 24(a) as well as Rule 24(b). Accordingly, the motion of the committee for intervention in this adversary proceeding is denied, and its counterclaim is dismissed. A separate order shall issue hereon.