**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,**

v.

**PIERCE PACKING COMPANY and Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Local Union No. 560, Defendants-Appellees.**

**Nos. 80–3367, 81–3066.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1981.

Decided March 1, 1982.

Rehearing and Rehearing En Banc Denied June 9, 1982.

Sandra G. Bryan, Atty., E. E. O. C., Washington, D. C., for plaintiff-appellant.

Jerome Anderson, Neil S. Keefer, Keefer & Roybal, Billings, Mont., for defendants-appellees.

Before KILKENNY and GOODWIN, Circuit Judges, and TANNER,* District Judge.

TANNER, District Judge:

In 1973, appellant, the Equal Employment Opportunity Commission, and respondent, Pierce Packing Company (Pierce), entered into a settlement agreement to resolve alleged unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq. In 1977, the EEOC filed an action against Pierce and two unions to enforce that agreement. The action was dismissed for lack of jurisdiction in 1980, and attorneys' fees and costs were awarded to defendants Pierce and Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Local Union No. 560 (Local 560). Appellant claims that the court erred in both the dismissal and the monetary awards.

## FACTUAL BACKGROUND

In August of 1973, sex discrimination charges were filed with both the EEOC and the Department of Labor against Pierce Packing Company. The charges, brought on behalf of eleven female employees, alleged sexual discrimination in regard to pay, job bids, and harassment. The charge also alleged that "light commodity" jobs were paid at a lower rate than "heavy commodity" jobs. Pursuant to a 1969–70 collective bargaining agreement between Pierce and Local 560, jobs previously categorized as "male" or "female" were categorized as "heavy" or "light commodity."

The Department of Labor conducted a two week investigation, and determined that eight of the "light commodity" jobs

should be upgraded to "heavy commodity" status. The EEOC did not conduct an independent investigation. After obtaining the results of the D.O.L. investigation, the EEOC entered into a settlement agreement with Pierce and the eleven aggrieved female employees. That agreement effectuated the Department of Labor findings, as it upgraded eight jobs from "light commodity" to "heavy commodity" classifications. The district court noted that the agreement did not constitute an admission by Pierce of any violation of Title VII. Pierce agreed to post job vacancies, to let women bid on jobs, and to transfer seniority for women who switched jobs. Pierce also agreed to implement an affirmative action program. The EEOC was to determine whether Pierce was in compliance with the agreement, and was empowered to request written compliance reports and to make on-site inspections.

The eleven aggrieved women, signatories to the agreement, were paid back wages for the discrepancy in pay they had received. In return, the women waived their right to sue Pierce Packing Company for any past violation of Title VII.

In September of 1975, an aggrieved signatory complained to the EEOC that Pierce had breached the agreement and continued to discriminate and retaliate against women employees. She further alleged that women with more seniority than men were laid off first, and that women were reclassified into "light commodity" jobs while men with less seniority were retained in the "heavy commodity" jobs.

The EEOC conducted an "on-site compliance review" on November 10 and 11, 1975. The investigator found ". . . continued sex discrimination, to wit, sex segregated departments and job classification with resulting pay disparity and sexually discriminatory lay-off policy . . . ." On November 13, 1975 a letter which listed these findings in detail was sent to Pierce. The district court viewed this as ". . . an attempt at concilia-

* Honorable Jack E. Tanner, United States District Judge, Western District of Washington, sitting by designation.

tion; the EEOC was seeking an addendum to the original settlement agreement, or a new agreement."

Counsel for Pierce responded to the EEOC letter on December 5, 1975. This response stated that "certain provisions of a supplemental settlement proposed by the EEOC were not acceptable and that others were," and that a reply from the EEOC was expected. The final correspondence between the parties was a certified letter from the EEOC one month later. The letter noted the failure of conciliation and termination of such efforts unless Pierce made a written request for resumption of conciliation within five days. The president of Pierce and his negotiators and attorneys disclaim knowledge of receipt of the letter.

In February of 1977, thirteen months after the notice of failure of conciliation, the EEOC filed a complaint in the District Court. The complaint alleged that Pierce had intentionally engaged in unlawful employment practices in violation of Title VII. Two unions were also named as defendants pursuant to Fed.R.Civ.P. 19(a): Local 560 and the International Union of Operating Engineers, AFL–CIO, Local Union No. 400. The unions were not charged with Title VII violations, but were viewed as interested parties because of collective bargaining agreements with Pierce.

In May of 1979, the court granted defendant Engineer Union's motion for summary judgment and awarded attorney's fees. The EEOC does not appeal from that judgment.

In February of 1980, Pierce moved for summary judgment on the ground that the EEOC had not found reasonable cause or conciliated prior to bringing suit as required by 42 USC § 2000e–5. Local 560 also moved for summary judgment on the basis of failure to conciliate.

The district court dismissed this action for lack of jurisdiction in June of 1980, noting that the EEOC had failed to satisfy conditions precedent to suit. Pierce was awarded $23,007.65 attorney's fees, plus costs. In December of 1980, Local 560 was awarded $5,212.50, plus costs. From these judgments, the EEOC appeals.

## JURISDICTION

Title VII of the Civil Rights Act of 1964 conferred upon the EEOC only the powers of investigation and conciliation. A 1972 amendment empowered the agency to commence civil suits in its own name. 42 U.S.C. § 2000e–5(f)(1). There are several conditions precedent however, which the agency must satisfy before it may bring suit. *See, e.g., EEOC v. Container Corp. of America*, 352 F.Supp. 262, 265 (M.D.Fla. 1972); *EEOC v. Allegheny Airlines*, 436 F.Supp. 1300, 1304 (W.D.Pa.1977); *EEOC v. E. I. DuPont de Nemours and Co.*, 373 F.Supp. 1321, 1333 (D.Del.1974), *aff'd*, 516 F.2d 1297 (3rd Cir. 1975). The enabling act states that: "The commission is empowered, *as hereinafter provided*, to prevent any person from engaging in any unlawful employment practice ..." 42 U.S.C. § 2000e–5(a). (Emphasis added.) The initial step in a Title VII action occurs when a charge of unlawful employment practice is filed with the EEOC. § 2000e–5(b). The EEOC next must notify the alleged wrongdoer of the charge, conduct an investigation, and determine whether reasonable cause exists to believe that the charge is true. *Id.* If reasonable cause is not found, the charge shall be dismissed. *Id.* If reasonable cause is found, "... the commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the commission determines that further conciliation efforts would be futile or nonproductive, it shall so notify the respondent in writing. 29 CFR 1601.25 (1980). This notice is to apprise the respondent of a "last chance" to conciliate. *See, e.g., EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8th Cir. 1974). Only after the preceding steps have been exhausted, and the commission is unable to reach an acceptable conciliation, may the commission bring a civil action. 42 U.S.C. § 2000e–5(f)(1).

The 1973 settlement agreement between the EEOC and Pierce was reached

shortly after the original charge was filed, but before independent investigation and a reasonable cause determination. 29 CFR 1601.20(a) (1979) provides for such negotiated settlements:

> *Prior to the issuance of a determination as to reasonable cause*, the Commission may encourage the parties to settle the charge on terms that are mutually agreeable. . . . The Commission shall limit its undertaking in such settlements to an agreement not to process that charge further. *Such settlements shall note that the Commission has made no judgment on the merits of the charge. Such an agreement shall not affect the processing of any other charge, including,* but not limited to a Commissioner charge or *a charge, the allegations of which are like or related to the individual allegations settled.* (Emphasis added.)

Since voluntary agreements are the preferred means of achieving the objectives of Title VII, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974); *accord, Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980), the settlement served as a satisfactory resolution of the 1973 charge against Pierce. Section 1601.20(a), however, does not permit court involvement predicated on breach of a settlement agreement, absent reasonable cause determination and good faith attempts at conciliation.

The EEOC acted improvidently when it attempted to use the 1973 settlement agreement as a springboard to court enforcement in 1977. The requirements of Title VII are not vitiated by a previous settlement agreement. The district court opinion noted that "... *not once* has the EEOC conducted its own statutorily mandated investigation nor has it made a reasonable cause determination." (Emphasis in original.) Consequently, there was "... no framework which would make conciliation attractive or efficacious." The exchange of letters between Pierce and the EEOC was inadequate to constitute legitimate conciliation. The district court noted that no negotiations ever took place regarding the compliance review. Confronted with similar shortcomings by

the EEOC, the court in *EEOC v. E. I. DuPont de Nemours and Co.*, 373 F.Supp. 1321, 1333 (D.Del.1974), *aff'd*, 516 F.2d 1297 (3d Cir. 1975), stated that:

> The Commission's functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII. It is difficult to believe that Congress directed the Commission to make a determination of reasonable cause on the merits of a charge and nevertheless contemplated that the Commission could institute such litigation before it makes such a determination. Similarly, it is difficult to conclude that Congress directed the Commission to conciliate and then authorize it to initiate adversary proceedings before the possibility of voluntary compliance has been exhausted.

Genuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC which are conspicuously absent here.

Appellant argues that specific performance of the agreement should be allowed under general principles of contract law, and suggests that the statutory preconditions to filing an enforcement action under Title VII do not apply to the claim for relief for breach of the settlement agreement. These contentions are without merit. Although specific performance of EEOC conciliation agreements has been allowed, *see, e.g., EEOC v. Contour Lounge Chair Co.*, 596 F.2d 809, 814 (8th Cir. 1979), the differences between "conciliation" and "settlement" are more than semantic. Conciliation contemplates charge, notice, investigation and determination of reasonable cause. 42 U.S.C. § 2000e–5(b). A settlement agreement may precede genuine investigation, determination of reasonable cause and conciliation, but it may not replace these preludes to a civil action. 29 CFR 1601.-20(a). Since this is a suit to cure alleged unlawful employment practices, the specific mandates of Title VII, *not* general principles of contract law, dictate the procedures which the EEOC must adhere to.

Since general provisions of contract law are inapplicable in a suit by the EEOC to eradicate alleged unlawful employment practices, general jurisdictional statutes are likewise insufficient to sustain this action. The district court opinion succinctly stated that:

> The EEOC may have had good intentions when this whole matter came to life in 1973, but since then mistakes in the formulation and prosecution of its case have engendered even more mistakes, finally leaving this court without jurisdiction. A Pre-Determination Settlement Agreement cannot be entered into as a means of later leapfrogging all jurisdictional requirements when Title VII violations are charged.

Just as it is futile to "lock the barn after the horse has escaped," the EEOC's justifications and explanations on appeal are inadequate to cure the flaws which confronted the district court. The only cure is to follow the guidelines of Title VII.

## COSTS AND ATTORNEYS' FEES

The Commission's enabling act specifically provides for the award of fees and costs to the prevailing party in a Title VII action. 42 U.S.C. § 2000e–5(k). The award is subject to the qualified discretion of the trial court. "In sum, a district court may in its discretion award attorneys fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The district court found that: "These procedural and regulatory defects committed by the EEOC were clearly cognizable at an early stage in this litigation's history. The EEOC's obvious disregard for such promulgated regulations is the apex of unreasonableness." There is adequate support in the record to uphold this finding.

The EEOC complains that, in any event, the awards were excessive, in large part because summary judgment was granted more than three years after the suit had been brought. Plaintiff, having filed an "unreasonable" complaint, cannot claim prejudice by the defendant's delay in bringing a meritorious motion for summary judgment.

It is well settled in this circuit that the award of fees and costs rests within the sound discretion of the trial judge, and will not be overturned absent abuse. *See, e.g., Moore v. City of San Jose*, 615 F.2d 1265, 1274 (9th Cir. 1980). The only abuse of discretion which has been shown has been the premature filing of this case by the EEOC. The district court's awards of fees and costs to both Pierce and Local 560 were not an abuse of discretion.

### CONCLUSION

The EEOC's failure to comply with both its enabling act and its regulations made it proper for the district court to dismiss this action for lack of jurisdiction. Accordingly, the awards of fees and costs were appropriate. The district court decision is affirmed in its entirety.