677 F.2d 733
 28 Fair Empl.Prac.Cas. 1609,
29 Empl. Prac. Dec. P 32,813,
3 Employee Benefits Ca 1569
RETIRED PUBLIC EMPLOYEES' ASSOCIATION OF CALIFORNIA, et al.,
Plaintiffs/Appellees,
v.
STATE OF CALIFORNIA, et al., Defendants/Appellants.
 No. 80-4246.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 13, 1981.
Decided May 17, 1982.
 
 Robert E. Murphy, Deputy Atty. Gen., San Francisco, Cal., for plaintiffs/appellees.
 Fred D. Lonsdale, Davis, Cowell & Bowe, San Francisco, Cal., for defendants/appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON and SCHROEDER, Circuit Judges, and RICHEY,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 I. FACTS
 
 1
 A class of public employees sued the State of California, alleging that the State had discriminated in the payment of retirement benefits to the class in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
 
 
 2
 The district court certified the class as all members of the California Public Employees Retirement System (PERS) who retired before January 1, 1977, and who are now receiving a lower monthly retirement benefit than similarly situated members of the opposite sex. The court then found that the pension plan violated Title VII and granted summary judgment in favor of the class. The court ordered the State to increase the benefit levels of the class retroactive to the date of the Supreme Court's decision in City of Los Angeles v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). The State appeals. We affirm in part and reverse in part.
 
 II. TITLE VII VIOLATION
 
 3
 The retirement plan in dispute was operated by the State of California from 1971 until 1977. It required equal contributions from all employees but differentiated in the level of benefits to similarly situated employees on the basis of sex.[1]
 
 
 4
 The district court, in holding that this plan violated Title VII, relied upon Manhart, supra. In Manhart, the Supreme Court held that a pension plan which required female employees, who received the same benefits under the plan as similarly situated male employees, to make higher contributions to the fund than male employees violated Title VII.
 
 
 5
 The defendant in Manhart argued that the higher rate was necessary to meet the greater costs of pensions for females who, as a class, have a longer life expectancy than males, as a class. Manhart does not dispute the actuarial assumption that women, as a class, live longer than men. But the Court held that Title VII prohibits the practice of requiring higher contributions from female employees based upon statistical averages for women. The Court noted that the statute's focus on the individual was unambiguous and that "(e)ven a true generalization about the class is an insufficient reason for disqualifying an individual to whom the generalization does not apply." Id., 435 at 708, 98 S.Ct. at 1375, 55 L.Ed.2d at 665. It concluded that the practice in question did not even pass the "simple test of whether the evidence shows 'treatment of a person in a manner which but for that person's sex would be different.' " Id. at 711, 98 S.Ct. at 1377, 55 L.Ed.2d at 667 (quoting Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1174 (1971).
 
 
 6
 The State argues that their retirement plan does not violate Title VII because: (1) the different benefit levels do not favor any particular class; (2) the plan is not a barrier to employment; and (3) the plan is valid under the rationale of General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). We cannot agree.
 
 
 7
 That the plan results in different benefits for the sexes at different ages,[2] the necessary result of using sex-differentiated tables, does not save the plan from Title VII attack. Although contributions made by male and female employees are equal, benefit levels differ under the plan. A woman who retires before 60 will receive a higher benefit than a similarly situated male who retires before 60. Retirement after 60 results in a more favorable benefit to the male employee. This is precisely the type of class-based sex discrimination that Manhart prohibits. We do not read Manhart to permit discrimination against one sex so long as the State discriminates in another manner against the other sex.
 
 
 8
 The State cites cases that note that the congressional intent of Title VII was to remove barriers to employment based on sex. See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). But these cases do not establish a requirement that the challenged practice be a practical barrier to employment in order to establish a Title VII violation. The plain language of the statute does not require such a showing.[3]
 
 
 9
 The State also argues that the plan is valid under the rationale of General Electric Co. v. Gilbert, supra. In General Electric, the Supreme Court found that the exclusion of pregnancy benefits from a disability insurance program did not violate Title VII. The court held that the exclusion did not discriminate against women as a class. Rather the disability benefit plan classified two groups-pregnant persons and non-pregnant persons. The court in Manhart distinguished General Electric because "on its face, this plan discriminates on the basis of sex whereas the General Electric plan discriminated on the basis of a special physical disability." 435 U.S. at 715. In the present case, as in Manhart, the benefit payments under the 1971-1977 plan are explicitly based on the sex of the retiree and thus the State's argument must fail.[4] The 1971-1977 plan violates Title VII.
 
 III. RELIEF
 
 10
 The district court's April 25, 1980 order requiring the State defendants (appellants) to "raise monthly retirement benefits of members of the class to the level received by similarly situated members of the opposite sex without reducing the benefits of any individual" is a remedy consistent with that court's discretionary power to award equitable relief under the act. See 42 U.S.C. § 2000e-5(g). This court may review such an award to determine whether the district court abused its discretion "to locate a 'just result' in light of the circumstances peculiar to the case." Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). We affirm that part of the district court's order granting relief to members of the class who retired after March 24, 1972, the date Title VII became effective as to public employees. See 42 U.S.C. § 2000e(a). However, we reverse that part of the order granting relief to class members who retired prior to the 1972 effective date.
 
 
 11
 The State asserts that the district court's award of relief is impermissibly retroactive in the sense that it affects pension rights that vested before the plan became illegal under Title VII. Here, the State argues that each employee's pension rights vested in incremental amounts upon the date of each contribution to the fund. The State carries its argument a step further, contending that the retirement plan violated Title VII only after the Manhart decision. Accepting the latter argument makes the State liable for no additional payments because the State argues that all of the retirees' rights vested before Manhart was announced in 1978.[5]
 
 A.
 
 12
 We accept the State's approach to the question of relief only partially. The State's argument that each contribution to the fund froze the rights of the retiree is not persuasive. But, the State's argument that the district court's award of relief affects vested rights is persuasive as to those members of the class who retired before Title VII became applicable to public employees on March 24, 1972. Until that date, the State's retirement plan was not illegal and the pension rights of class members retiring prior to that date were fixed.
 
 
 13
 We conclude that Manhart and general equitable principles require that federal courts not upset the payment of fixed benefits under a pension plan that was legal on the date of the person's retirement. Therefore, the relief shall be limited to those class members who retired after the date Title VII became applicable to public employees.[6] A similar result has been reached by the Fifth Circuit in Scammel v. City of Dallas, 565 F.2d 955 (5th Cir. 1978) (per curiam). Such a result makes the application of Title VII with respect to retirees coextensive with the Employee Retirement Income Security Act of 1974, which expressly provides that the Act's benefits are not available to persons who retired prior to its effective date. See 29 U.S.C. § 1061(b)(2); Haeberle v. Board of Trustees, 624 F.2d 1132, 1137 (2d Cir. 1980).
 
 B.
 
 14
 As to the post-effective date retirees, the State attempts to avoid prospective benefit payment adjustments by arguing that the retirement plan violated Title VII only after the Manhart decision. The State contends that Manhart established a general hands-off rule with regard to Title VII remedies affecting pension plans that were adopted before Manhart. We think the State reads Manhart too broadly. The Court in Manhart rejected a claim for backpay in a case in which a pension plan violated Title VII by requiring female employees to make higher contributions than males while receiving identical benefits. The Court did not address the propriety of prospective relief in the form of equalized benefits paid to post-effective date retirees under plans requiring equal contributions, but violating Title VII because of a discriminatory benefit payment feature. Manhart's rejection of a backpay award was not equivalent to a pronouncement of non-retroactivity precluding prospective benefit adjustments for employees retiring under pre-Manhart plans.
 
 
 15
 Although the pension plan at issue in Manhart had been altered by the time the case reached the Supreme Court, the Court let stand an injunction against the higher contribution rate, thus granting relief that limited the future operation of the fund. What the Court did note with apparent approval was the proposal of commentators that the judiciary exercise discretion to cure the danger of "staggering damage awards" on pension funds. Manhart, supra, 435 U.S. at 723, n.44, 98 S.Ct. at 1383, n.44, 55 L.Ed.2d at 674, n.44. We are persuaded that the language of Manhart should be read as generally requiring courts to exercise caution when designing relief that affects pension and retirement funds. The relief granted below to class members retiring after the effective date of Title VII exhibits just such a cautionary approach.[7] Moreover, this court has recently approved of the granting of relief in the form of prospective equalization of benefits in a case factually similar to the present case. See Norris v. Arizona Governing Committee, etc., 671 F.2d 330 (9th Cir. 1982). We accordingly approve the order below granting prospective equalization of benefits to class members retiring after March 24, 1972.
 
 C.
 
 16
 Nor are there any compelling reasons justifying the position that the appropriate relief should not be made retroactive to the date of the Manhart decision. In Manhart, the Supreme Court did reverse the backpay award of the higher contributions made by the female employees. The Court gave three reasons for the reversal: (1) pension plan administrators could have reasonably thought that requiring higher contributions from female employees did not violate Title VII; (2) a retroactive award was not necessary to force administrators to mend their ways; and (3) such a backpay award, unforeseen by the administrators, could have a devastating financial impact on the pension plans and the great number of people who depend upon them. 435 U.S. at 718-23, 98 S.Ct. at 1380-83, 55 L.Ed.2d at 671-74.
 
 
 17
 In this case, as in Manhart, a retroactive award is not necessary to force administrators to mend their ways. The State's present retirement plan distributes equal benefits to similarly-situated male and female employees who retired after January 1, 1977. But, Manhart is distinguishable from the present case because: (1) after the decision in Manhart, pension plan administrators could no longer reasonably think that the distribution of unequal benefits did not violate Title VII; and (2) in view of Manhart, the award should have been foreseen and taken into account by administrators, thus lessening the financial impact on the pension plan. Manhart does not bar the prospective relief of increased benefits retroactive to the date of the Manhart decision.[8]
 
 
 18
 We reverse that portion of the district court's order requiring benefit payment adjustments for class members who retired prior to March 24, 1972. All other portions of the district court's order are affirmed.
 
 
 19
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 The Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Until 1971, the State's retirement plan differentiated on the basis of sex with regard to both contributions to and benefits from the fund. The State does not dispute that this earlier plan violates Title VII. Rather, the State argues that the continued payment of benefits under any plan in effect before the date of the Manhart decision does not violate Title VII. After 1977, the State equalized both contributions and benefits for male and female employees. Cal. Gov't Code § 21251.13 (West 1980)
 
 
 [2]
 To account for the actuarial assumption that women as a class live longer than men, the plan distributes benefits at different rates depending upon the sex of the retiree. The State's tables set up a retirement target age of 60. Similarly situated men and women who retire at age 60 receive equal benefits. Individuals, however, often retire at an age other than the target retirement age. If the total average lifetime benefit is to be equal, it is necessary to adjust the monthly benefit to reflect the actuarial assumption that the fund of contributions and investment income will be paid out over a different number of years. Thus if a man retires at 60, he may be expected to live 20 years. But if that man retires at 59, there is a change in life expectancy and an expectation that there will be more monthly payments. The result is a decrease in benefits each month to reflect that actuarial assumption
 If, at age 60, an average woman is expected to live 25 years and she retires at age 59, there will be an expectation of more monthly payments because there is a change in life expectancy. Because the average woman's life expectancy is greater, however, the change in life expectancy is a lower percentage, i.e., 1/25 or 4% compared with 1/20 or 5%. Thus payments in that year are a higher percentage of the actuarial benefit. A woman who retires before age 60 would receive more each month than a similarly situated man because, as a group, men are expected to live fewer years than women, as a group.
 
 
 [3]
 Moreover, there was no discussion of this requirement in Manhart. The Supreme Court implicitly rejected imposing such a requirement when it discredited the defendant's argument in Manhart that equalizing contributions was discriminatory to male employees. The defendant contended that male employees would leave their jobs to obtain a better pension plan if equal contributions were required. The court noted that the Department's claim was unsubstantiated "presumably because an employee who wants to leave the plans must also leave his job, and few workers will quit because one of their fringe benefits could theoretically be obtained at a marginally lower price on the open market." 435 U.S. at 716 n.30, 98 S.Ct. at 1379, 55 L.Ed.2d at 670
 
 
 [4]
 Nor does Dothard v. Rawlinson, 433 U.S. 321, 328, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977), support the State's argument. Although Dothard required a showing of disproportionate impact, it involved the application of neutral standards, i.e., height and weight requirements that operated in an allegedly discriminatory manner. This case involves practices that discriminate on their face on the basis of sex
 
 
 [5]
 Thus the State contests the payment of any increased level of benefits, from either the date of Manhart or from the date of the district court's judgment. This is a different and more far-reaching argument than that the district court's award of increased benefits to the class retroactive to the date of the Manhart decision was inappropriate
 
 
 [6]
 It is true that in some cases the continuing effects of past discrimination have been remedied when those effects extend past the effective date of Title VII. See, e.g., Moore v. City of San Jose, 615 F.2d 1265, 1273 (9th Cir. 1980). However, it must be noted that in Moore, the public employees group was small, involved no retroactive pay, and the retroactive seniority rights granted to a few women whose employment dates preceded March 24, 1972, came about only after reaching the carefully negotiated agreement settling the conflicting claims of the parties. The case did not involve a litigated award. In Moore, we did not pass upon Title VII retroactive pay awards in the public sector. We merely upheld the district court's finding that the settlement was fair and reasonable, especially noting that the retroactivity for seniority was based upon a Fourteenth Amendment equal protection claim as applied to public sector employees. 615 F.2d 1265, at 1272-73
 
 
 [7]
 By order dated May 29, 1979, the district court concluded:
 "Both sides rely on the Manhart decision in support of their respective motions. Plaintiffs contend that Manhart forbids the use of sex-based actuarial tables in calculating retirement benefits. Defendants, however, argue that an exception to Manhart exists where compliance would have an economically devastating effect on the pension fund. (See Manhart, supra, 98 S.Ct., at 1380-1383). The Court finds defendants' argument unpersuasive. Even if Manhart could be read so broadly as to permit the present and continuing payment of unequal pension benefits to recipients due solely to their sex, the Court does not feel that defendants have made a sufficient factual showing of such an adverse economic effect on the fund."
 The above finding demonstrates that the district court cautiously evaluated the economic effects of its proposed relief.
 
 
 [8]
 The State also contends that the class representatives did not adequately defend the interests of all the class members on this appeal. The State bases its argument on the representatives' use of examples in their appellate brief that focus on the detriment suffered by the female members of the class as a result of the retirement plan
 The argument borders on the frivolous. In most cases, the arguments that use references to women in the examples are equally valid when replaced by references to men. Moreover, the focus upon the impact of the plan on women was designed to respond to the State's major argument that the overall effect of the retirement plan must favor one group over another to violate Title VII. It would have been inadequate representation if the class representatives simply hoped that the State's view would not be adopted and did not try to argue that even if this view were correct, the plan does favor one class over another. The class representatives have strongly defended the position that the benefit levels of both male and female members who have been discriminatorily treated should be raised.